[L.A. No. 31661. Mar. 24, 1983.]

VALLEY CIRCLE ESTATES et al., Cross-complainants and Appellants, v. VTN CONSOLIDATED, INC., Cross-defendant and Respondent.

606

**COUNSEL**

John J. Tary, Robert R. Ronne and Hagenbaugh & Murphy for Cross-complainants and Appellants.

Robert L. Bachman, Michael T. Fogarty and McDonough, Holland & Allen for Cross-defendant and Respondent.

James P. Corn, Mary A. O'Gara and Turner & Sullivan as Amici Curiae on behalf of Cross-defendant and Respondent.

**OPINION**

**REYNOSO, J.**—Does Code of Civil Procedure section 337.15 permit a general contractor tort defendant to file a cross-complaint for equitable indemnity against a subcontractor who cannot otherwise be reached under the limitations period of the statute in a direct action for damages? We hold that such a cross-complaint for indemnity is proper.

On March 23, 1978, plaintiffs Fred M. and Ruth S. Zeleznick filed a complaint for damages to their home resulting from soil subsidence. The defendants in the suit include the general contractor, developer and seller of the residence,

Valley Circle Estates (Valley Circle). Valley Circle is a partnership comprised of numerous entities and individuals who have been separately sued in the action. Defendants also include the civil engineer with which Valley Circle contracted to prepare the grading plan and perform surveying services, VTN Consolidated, Inc. (VTN). The completion of VTN's services was certified on April 5, 1966. A notice of Valley Circle's completion of the residence was signed March 25, 1968, and recorded March 28, 1968.

In their complaint, the Zeleznicks allege that defendants failed to exercise due care in the grading and compaction of plaintiffs' lot, the construction of their residence, and the installation of drainage pipes. As a result, the Zeleznicks claim, their yard became saturated during rainstorms and began subsurface movement, placing stress on the property's sewer lines and on the structure itself. As the condition worsened, cracks began to appear on the floor and walls of the garage and in the sidewalk, and the adjoining yard area began to sink and subside. Other walls were forced upwards, causing damage to the interior walls and floors of the house, and causing the floor of the upper story of the residence to tilt downward.

The Zeleznicks allege that as a consequence of these impairments, the market value of their home has been reduced from $150,000 to $60,000. They estimate that this $90,000 reduction in market value could be restored by remedial work, repair and reconstruction costing $40,000. They further claim damages to the value of use and occupancy of the residence of $30,000, plus Mr. Zeleznick's loss of wages while making repairs of $2,000. The total amount of damages claimed is $72,000.

Valley Circle filed a cross-complaint for declaratory relief to determine its equitable indemnity rights against VTN. Subsequently, VTN filed a motion for summary judgment to compel its dismissal from the direct action. VTN asserted that, as to it, the action, filed 12 years after completion of its services, was untimely under the 10-year statute of limitations of Code of Civil Procedure section 337.15, subdivision (a).[1] The trial court granted VTN's motion.

---

[1]Section references are to the Code of Civil Procedure unless otherwise noted.

Section 337.15 provides in full: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following:

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection.

"(c) As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in

After its dismissal from the direct action, VTN filed a motion for summary judgment seeking dismissal from Valley Circle's cross-complaint for equitable indemnity, again relying on section 337.15. The trial court rendered a summary judgment in favor of VTN based on section 337.15, subdivision (c), citing *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 639, footnote 9 [147 Cal.Rptr. 486, 581 P.2d 197]. The trial court denied Valley Circle's motion for reconsideration.

Valley Circle contends that under section 337.15, subdivision (c), a general contractor may file a cross-complaint for indemnity against a subcontractor more than 10 years after the subcontractor's services have been substantially completed, provided the main cause of action against the general contractor was itself filed within the 10-year statute of limitations. Valley Circle bases this contention on a literal reading of subdivision (c). For the reasons discussed below, we agree.

I

■ We are guided by the fundamental rules of statutory construction. A court " ' "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' " (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732 [114 Cal.Rptr. 460, 523 P.2d 260], quoting *People* v. *Superior Court* (1969) 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].) To determine such intent, the court must turn first to the language of the statute itself. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].) "Excepting when clearly otherwise intended or indicated, words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the common-

---

this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section.

"(d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action.

"(e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action.

"(f) This section shall not apply to actions based on willful misconduct or fraudulent concealment.

"(g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs:

"(1) The date of final inspection by the applicable public agency.

"(2) The date of recordation of a valid notice of completion.

"(3) The date of use or occupation of the improvement.

"(4) One year after termination or cessation of work on the improvement.

"The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement."

ly understood meaning thereof. [Citation.]" (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 642 [122 P.2d 526].) "Legislative enactments are to be construed in accordance with the ordinary meaning of the language used, if the words are not ambiguous and do not lead to an absurdity. [Citations.]" (*Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist.* (1974) 37 Cal.App.3d 35, 42-43 [112 Cal.Rptr. 27].)

Applying these principles to the case before us, we find that the language of section 337.15, subdivision (c), is clear, unambiguous, and reasonable. This subdivision provides that "an action for indemnity" is included in those direct actions set forth in subdivision (a) which may not be brought against any person, or the surety of a person, who develops or improves real property, more than 10 years after the substantial completion of such development or improvement. It permits, however, one clear exception: "*except that a cross-complaint for indemnity may be filed* pursuant to subdivision (b) of Section 428.10[2] *in an action which has been brought within the time period set forth in subdivision (a) of this section.*" (Italics added.)

When it was introduced in the Legislature, subdivision (c) of the original bill did not contain this exception clause. (Assem. Bill No. 2742 (1971 Reg. Sess.).) The clause was added by amendment and the subdivision enacted in its present form. (Stats. 1971, ch. 1569, § 1, pp. 3148-3149.) Had this clause not been added, subdivision (c) would have required that the actions directly subject to the 10-year limitation period of the statute include all actions for indemnity. However, the exception clause created a clear distinction between direct actions for indemnity and cross-complaints for indemnity.

We read this language to mean that a cross-complaint for indemnity may be filed more than 10 years after the alleged indemnitor has substantially completed his services, provided that the underlying action was itself brought within the 10-year limitation period of the statute.

Thus, a defendant timely sued under section 337.15, subdivision (a), may file under subdivision (c) a cross-complaint for indemnity against a third party who could not otherwise be reached by a direct action for indemnity filed by the defendant, or by a direct suit for damages filed by the plaintiff.

---

[2]Section 428.10 provides in pertinent part: "A party against whom a cause of action has been asserted . . . may file a cross-complaint setting forth . . . (b) Any cause of action he has against a person alleged to be liable thereon, whether or not such person is already a party to the action, if the cause of action asserted in his cross-complaint (1) arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause brought against him or (2) asserts a claim, right or interest in the property or controversy which is the subject of the cause brought against him."

VTN advances both statutory and decisional arguments to support its contention that when a direct action against a party is barred by the 10-year limitation period of section 337.15, a cross-complaint for indemnity against that party is also barred. VTN first points out that subdivision (a) bars actions for damages against "any person," or the surety of "a person," who develops or improves real property more than 10 years after substantial completion of their development or improvement. VTN then argues that, as used in subdivision (c), "a person" should be similarly protected against all claims, direct or derivative, for indemnity.

While we agree that the term "person" is used consistently throughout the statute, we disagree with VTN's conclusion. It ignores the plain language of the second clause of subdivision (c) which provides for an exception to the application of the statute's limitation period for cross-complaints for indemnity, provided such cross-complaints are brought in an underlying action which itself has been timely filed under subdivision (a).

VTN next argues that the holding in *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762 [167 Cal.Rptr. 440], supports its interpretation that all claims for indemnity are barred more than 10 years after a developer or improver of real property has ceased its involvement in a project. In *Liptak,* the court held that in a direct action for damages under section 337.15, the commencement of the 10-year statute of limitations must be independently determined for each developer and improver according to the date on which each person's development or improvement was substantially completed. This holding was subsequently incorporated into section 337.15 as subdivision (g). (Stats. 1981, ch. 88, § 1, pp. 151-152.) However, *Liptak* is inapplicable to the interpretation of subdivision (c) as that case did not involve an action for indemnity. The decision in *Liptak,* as set forth in subdivision (g), provides guidance only in determining the date for commencing the 10-year statute of limitations applicable to the direct actions set forth in subdivision (a), including, as defined by the first portion of subdivision (c), direct actions for indemnity. VTN's interpretation of section 337.15 would require us to interpret the "except" language of subdivision (c) as unnecessary. "[Statutory] construction making some words surplusage is to be avoided." (*Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].)

We agree with VTN that section 337.15 bars all direct actions, for damages or indemnity, against any person, or the surety of a person, who develops or improves real property more than 10 years after the substantial completion of such development or improvement. However, this does not alter our conclusion that subdivision (c) clearly allows those parties who cannot be reached in a direct action to nonetheless be reached in a derivative action for indemnity pursuant to a cross-complaint brought in a direct action which has been timely filed

under subdivision (a). If the legislative intent is clearly expressed on the face of the statute, its meaning cannot be challenged. (*People* v. *Chambers* (1972) 7 Cal.3d 666, 674 [102 Cal.Rptr. 776, 498 P.2d 1024], citing *People* ex rel. *Woods* v. *Sands* (1894) 102 Cal. 12, 16 [36 P. 404].)

Further, as Valley Circle points out, the trial court's reliance on *Regents of University of California* v. *Hartford Acc. & Indem. Co., supra,* 21 Cal.3d at page 639, footnote 9, is also inapplicable. In *Regents,* we held that construction sureties are not among those parties protected by section 337.15.[3] In footnote 9, we explained that: "[¶] Subdivision (c) of section 337.15 states that the statute's 10-year limitation applies to '. . . an action for indemnity brought against a person arising out of his performance or furnishing of services or materials referred to in this section.' We construe this language as limited to actions for contractual or implied indemnity between parties to the construction of the development or improvement; we do not apply it to bar a surety's suit for reimbursement." We thereby construed only the first portion of subdivision (c), which implicitly refers only to direct actions for indemnity, as coming within the statute's 10-year statute of limitations. *Regents* nowhere deals with the relevant portion of subdivision (c).

## II

Valley Circle contends that permitting a cross-complaint for indemnity under section 337.15, subdivision (c) is consistent with the common law rule that a cause of action for indemnity does not accrue until the indemnitee has suffered a loss through payment of an adverse judgment or settlement. We agree.

"[T]he governing authorities, both in California and throughout the country, uniformly hold that a tort defendant's equitable indemnity action is separate and distinct from the plaintiff's tort action. The indemnity action, unlike the plaintiff's claim, does not accrue for statute of limitations purposes when the original accident occurs, but instead accrues at the time the tort defendant pays a judgment or settlement as to which he is entitled to indemnity." (*People* ex rel. *Department of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 748 [163 Cal.Rptr. 585, 608 P.2d 673]; see also *id.,* at p. 751, and cases there cited.)

 A tort defendant retains the right to seek equitable indemnity from another tortfeasor even if the plaintiff's action against the cross-defendant is barred by the statute of limitations. (*Id.,* at p. 752, and cases there cited; see also *Watts* v. *Crocker-Citizens National Bank* (1982) 132 Cal.App. 516, 524

---

[3]The Legislature subsequently amended section 337.15 to protect sureties. (Stats. 1979, ch. 571, § 1, p. 1797.)

[183 Cal.Rptr. 304].) Moreover, a defendant may cross-complain for indemnity against a previously unnamed third party. (*Roylance* v. *Doelger* (1962) 57 Cal.2d 255, 258-259 [19 Cal.Rptr. 17, 368 P.2d 535], as codified in § 428.10 (previously § 442); Stats. 1971, ch. 244, § 45, pp. 372, 389.)[4] ■ Further, a cross-complaint for indemnity properly takes the form, adopted by defendant in the present case, of an action for declaratory relief. (§ 1060;[5] see, e.g., *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 849, fn. 5 [92 Cal.Rptr. 179, 479 P.2d 379].)

Finally, "the fact that a defendant is permitted under a third party procedure to bring a declaratory cross-complaint in the original tort action does not alter the general rule that, for statute of limitations purposes, the defendant's indemnity action does not accrue until he has suffered actual loss through payment." (*Department of Transportation, supra,* 26 Cal.3d at p. 759, citing *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505]. See also *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 604-607 [146 Cal.Rptr. 182, 578 P.2d 899]; *General Brewing Corp.* v. *Clark* (1968) 264 Cal.App.2d 518, 519 [70 Cal.Rptr. 907]

[4]For the text of the relevant portion of section 428.10, see footnote 2, (*ante*, at p. 609). California case law has consistently approved a broad and liberal interpretation of previous section 442 to permit a declaration of the rights and liabilities of all parties involved in a particular case. (See, e.g., *Thorpe* v. *Story* (1937) 10 Cal.2d 104, 134-135 [73 P.2d 1194]; *Nomellini Construction Co.* v. *Harris* (1969) 272 Cal.App.2d 352, 356-357 [324 P.2d 654].)

Section 428.20 underscores the propriety of filing such a cross-complaint against a previously unnamed party, and section 428.70 explicitly provides that a cross-complaint may be based on a claim of indemnity, whether total or partial, by defining "third-party plaintiff" as one claiming "the right to recover all or part of any amount for which he may be held liable."

Section 428.20 provides in full: "When a person files a cross-complaint as authorized by Section 428.10, he may join any person as a cross-complainant or cross-defendant, whether or not such person is already a party to the action, if, had the cross-complaint been filed as an independent action, the joinder of that party would have been permitted by the statutes governing joinder of parties."

Section 428.70 provides in full: "(a) As used in this section:

"(1) 'Third-party plaintiff' means a person against whom a cause of action has been asserted in a complaint or cross-complaint, who claims the right to recover all or part of any amounts for which he may be held liable on such cause of action from a third person, and who files a cross-complaint stating such claim as a cause of action against the third person.

"(2) 'Third party defendant' means the person who is alleged in a cross-complaint filed by a third-party plaintiff to be liable to the third-party plaintiff if the third-party plaintiff is held liable on the claim against him."

[5]Section 1060 provides in pertinent part: "Any person . . . who desires a declaration of his rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action in the superior court or file a cross-complaint in a pending action in the superior, municipal or justice court for a declaration of his rights and duties . . . . He may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force of a final judgment. Such declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

["The only attack on the cross-complaint which is plausible—though erroneous—would be that it is premature, not that the cause of action it pleads is outlawed. (Fn. omitted.)]".)[6]

We reject VTN's contention that the Legislature intended in section 337.15, subdivision (c), to overrule this common law principle. VTN relies on the holding in *Ernest W. Hahn, Inc.* v. *Superior Court* (1980) 108 Cal.App.3d 567, 570 [166 Cal.Rptr. 644], which provides that for purposes of cross-complaints for indemnity, "Code of Civil Procedure section 337.15 fixes the point at which the period of limitations begins to run at the completion of construction and *not the accrual of any cause of action resulting therefrom.*" (Original italics.)

VTN's reliance on *Hahn* is misplaced. *Hahn* involved an action for personal injuries resulting from latent construction defects. This court overruled the decision in *Hahn* by holding that section 337.15 is inapplicable to actions for personal injuries resulting from latent construction defects. (*Martinez* v. *Traubner* (1982) 32 Cal.3d 755 [187 Cal.Rptr. 251, 653 P.2d 1046].) Moreover, the main action in *Hahn* was against a restaurant owner. Owners of real property are not among those persons protected by section 337.15 (see subd. (e)). Thus, in *Hahn* neither the underlying action against the owner, nor the owner's cross-complaint for indemnity against the general contractor who built the restaurant, were properly brought under section 337.15.[7]

## III

Section 337.15 reflects a legislative preference that actions for indemnity in the construction industry be brought by cross-complaints rather than direct actions. This permissible legislative preference is consistent with the policies underlying the right to indemnification and the purpose and utility of cross-complaints.

---

[6]Similarly, throughout the United States, the general rule that a cause of action for indemnity accrues at the time the indemnitee suffers a loss applies not only to direct actions for indemnity but also to derivative or third party actions in which the alleged indemnitor is made a party to the tort action by the original defendant. (Annot., When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort (1974) 57 A.L.R.3d 867, 912-913 (fns. omitted). See, e.g., *Holzhauser* v. *Container Corp. of America* (W.D.Ark. 1982) 93 F.R.D. 837; *Taca International Air., S. A.* v. *Rolls Royce of England* (1965) 47 Misc.2d 771 [263 N.Y.S.2d 269]; *Choate* v. *United States* (D.Okla. 1964) 233 F.Supp. 463; *Vaughn* v. *Terminal Transport Company* (D.Tenn. 1957) 162 F.Supp. 647; *City of San Antonio* v. *Talerico* (1904) 98 Tex. 151 [81 S.W. 518].)

[7]For these reasons, we also reject VTN's reliance on *Hahn* for the proposition that a cross-complaint for indemnity may only be filed in an underlying action which was itself timely with respect to the alleged indemnitor.

■ The obligation of indemnity is a matter of fairness which we have defined as " 'resting on one party to make good a loss or damage another [party] has incurred.' " (*E. L. White, Inc.* v. *City of Huntington Beach, supra,* 21 Cal.3d 497, 506-507, quoting *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].) This court has previously noted that the Legislature enacted section 337.15 to protect contractors against infinite liability. As we explained: "A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise." (*Regents of University of California* v. *Hartford Acc. & Indem. Co., supra,* 21 Cal.3d 624, 633, fn. 2.)

Our holding does not create an infinite period of liability on the part of improvers of real property who contract to perform services for a general contractor. In a direct action for damages or indemnity, a subcontractor may be held liable no more than 10 years after substantial completion of his services. In a cross-complaint for indemnity, a subcontractor may be held liable to indemnify a contractor only so long as the contractor can be reached in a direct action for damages, or 10 years after substantial completion of the general contractor's project.

To impose on general contractors the liability of their subcontractors would not only be unfair, but could effectively deter the activities of the construction industry. On the other hand, to require that subcontractors remain liable for their work for the period of time during which general contractors must remain liable, should not only promote responsibility in the construction industry generally, but provide an additional incentive on the part of subcontractors to be certain of their work.

Furthermore, the practical advantage of requiring that actions for indemnity be brought by way of cross-complaint is the consolidation of related evidence and matters of proof in a single judicial proceeding. (*Babb* v. *Superior Court, supra,* 3 Cal.3d at p. 849, fn. 5 and accompanying text.) In the present case, the matters set forth in, and the evidence to be produced in proof of, the Zeleznicks' claim is the same as under Valley Circle's cross-complaint against VTN—that is, whose negligence, if any, resulted in the soil subsidence which damaged plaintiff's home. The cross-complaint serves the purpose of permitting a complete determination of the dispute among all the parties, thus avoiding circuity of proceedings. (See, e.g., *Bewley* v. *Riggs* (1968) 262 Cal.App.2d 188, 192 [68 Cal.Rptr. 520]; *Jefferson Incorporated* v. *City of Torrance* (1968) 266 Cal.App.2d 300, 303 [72 Cal.Rptr. 85].) Combining these causes in a single trial is an efficient utilization of limited judicial resources.

As this court recently noted, "[o]verburdened courts gain nothing from a rule which would discourage the filing of cross-actions in favor of independent actions." (*Shepard & Morgan* v. *Lee & Daniel, Inc.* (1982) 31 Cal.3d 256, 261 [182 Cal.Rptr. 351, 643 P.2d 968].) We have consistently concluded that the cross-action procedure represents a "more orderly and expeditious resolution of the controversy" in multiple party cases. (*E. L. White, Inc.* v. *City of Huntington Beach, supra,* 21 Cal.3d 497, 506.)

"Statutes of limitation are products of legislative authority and control." (*Zastrow* v. *Zastrow* (1976) 61 Cal.App.3d 710, 715 [136 Cal.Rptr. 536].) In general, a statute of limitations is enacted as a matter of public policy (*Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 228 [153 P.2d 325]), to afford repose by giving security and stability to human affairs (*Neff* v. *New York Life Ins. Co.* (1947) 30 Cal.2d 165, 175 [180 P.2d 900, 171 A.L.R. 563]).

" 'The only restriction as to the legislative power with respect to a statute of limitations is that it must not be so manifestly inequitable as to amount to a denial of justice, and, unless such is the case its determination is final.' " (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 887 [150 Cal.Rptr. 606], quoting *Ocean Shore R.R. Co.* v. *City of Santa Cruz* (1961) 198 Cal.App.2d 267, 273 [17 Cal.Rptr. 892].)

Section 337.15 permits all defendant general contractors in an action timely sued under subdivision (a) to cross-complain for indemnity against their subcontractors pursuant to subdivision (c). We conclude that this equitable legislative determination is final.

The judgment is reversed.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Grodin, J., concurred.