[No. F054609. Fifth Dist. Jan. 12, 2009.]

PINE TERRACE APARTMENTS, L.P., Plaintiff and Appellant, v.
WINDSCAPE, LLC, et al., Defendants, Cross-complainants and Appellants;
JEFFREY SCOTT, INC., et al., Cross-defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., IV., and V.

**4**

COUNSEL

Flynn/Williams, Robert P. Hall, Jr., and Stephen M. Flynn for Plaintiff and Appellant.

Cooper & Hoppe, Theodore W. Hoppe and Brian H. O'Driscoll for Defendants, Cross-complainants and Appellants.

Myers & Mayfield, Lori R. Mayfield, Michelle E. Sassano; Elie & Associates, Susan F. Leonard; Law Office of Zinkin & Bruce and Daniel A. Bruce for Cross-defendants and Respondents.

OPINION

DAWSON, J.—This appeal involves allegations of latent construction defects and the application of the 10-year statute of limitations set forth in Code of Civil Procedure section 337.15.[1]

The buyer of an apartment complex sued the developer and seller after discovering that all of the windows in the complex lacked flashing, which led to water and mold damage. The developer and seller filed a cross-complaint for indemnification against various subcontractors.

Three subcontractors moved for summary judgment on the cross-complaint on the ground it was barred by section 337.15. The superior court granted their motions. The developer and seller, as well as the buyer, appealed.

█ We reach the following conclusions. First, the exemption from the 10-year statute of limitations for "actions based on willful misconduct" (§ 337.15, subd. (f)) applies to cross-complaints for indemnity. Second, a willful misconduct claim may be made in a cross-complaint by way of incorporating by reference allegations contained in the complaint. Third, because of these two conclusions and because triable issues of material fact

---

[1] All further statutory references are to the Code of Civil Procedure, unless indicated otherwise.

regarding the willful misconduct claim are present here, the trial court erred in granting the subcontractors' motions for summary judgment.

Accordingly, the judgment will be reversed and the matter remanded for further proceedings.

## FACTS

*Parties*

Plaintiff Pine Terrace Apartments, L.P. (Buyer), is a California limited partnership. Buyer purchased a 256-unit apartment complex located at 353 and 373 West Nees Avenue, Fresno, California, commonly known as the Windscape Apartments (Apartments). Cal-Neva Asset Management Co., Inc., is the general partner of Buyer.

Defendants and cross-complainants are (1) Windscape, LLC, a Washington limited liability company; (2) Windscape, L.P., a California limited partnership; (3) Andrade Development Company, a California corporation; and (4) Eugene J. Andrade, an individual who (a) is the managing member of Windscape, LLC, (b) is the president of Andrade Development Company, and (c) was alleged to have been the general partner of Windscape, L.P. For purposes of this opinion, these four parties will be referred to collectively as Developer-Seller.

Windscape, L.P., was the original owner and developer of the Apartments. Andrade Development Company was the general contractor and builder. Windscape, L.P., transferred the Apartments to Windscape, LLC, which became the owner of record of the Apartments.

Cross-defendants are (1) Jeffrey Scott, Inc., doing business as Western Products Co. (Western), (2) Avila Cement, and (3) Weber-Iness Associates (collectively, Subcontractors).

*Apartments*

Construction of the Apartments began in 1989 and ended in 1991. Weber-Iness Associates, an architecture firm, contracted to prepare the plans for the construction of the Apartments. The written contract for the architectural services to be provided by Weber-Iness Associates expressly excluded any construction or supervision of construction.

Avila Cement contracted with Developer-Seller to supply concrete foundations and flatwork for the Apartments.

Western manufactured and installed the windows for the Apartments pursuant to an oral agreement with Developer-Seller. Western admits that it installed the windows without flashing paper, but asserts that its work complied with the building code and with the standard practice at that time.

A notice of completion for the 373 West Nees parcel was recorded with the Fresno County Recorder's Office on October 31, 1990. The notice of completion for the 353 West Nees parcel was recorded on May 1, 1991.

In 2002, Buyer and Developer-Seller entered agreements for the sale of the Apartments. Escrow for the sale closed on May 13, 2003.

*Alleged Defects*

Buyer alleges that, after the sale, it became aware of numerous and pervasive defects and damage throughout the Apartments. The alleged defects include damaged and defective roofing, balconies, flashing, trim, pavement, and sidewalks. Buyer expressed particular concern with water and mold damage caused by the absence of any flashing around all windows in the Apartments. Buyer asserts that Eugene J. Andrade knew flashing had not been installed at the Apartments and did not disclose the absence of flashing to Buyer.

Buyer presented the opinion of Adam Posard regarding the absence of flashing. Posard is licensed by California as an architect and a general building contractor. Posard inspected the Apartments and viewed photographs taken by an architect and contractor who performed repairs to the Apartments in 2006. Posard stated that flashing has been used by builders for generations and is required by the Uniform Building Code. He stated his opinion that "the only reason the General Contractor and its subcontractors would omit the required flashing is to save money, at the expense and harm to any subsequent purchaser of the property." In Posard's opinion, the omission of the flashing was the result of willful misconduct.

In its separate statement, Western asserted that its "installation of the windows without flashing paper was open and obvious to any person monitoring, inspecting or working on the job site." Developer-Seller disputed this assertion of fact, contending that the omission was not open and obvious because Eugene J. Andrade "had no knowledge that flashing paper could be installed around windows until after the pending case was filed." In contrast,

Buyer did not dispute Western's assertion of fact but made evidentiary objections to the declarations Western filed to support its assertion.

Western's moving papers and the opposition papers indicate that the parties dispute (1) whether Western's installation of windows complied with the Uniform Building Code and the City of Fresno Building Code and (2) whether, at the time of installation, the City of Fresno required flashing paper to be installed with the windows. Those papers also establish, and the parties do not dispute, that City of Fresno officials inspected and approved the window installation, although Buyer objected to the evidence Western submitted to support this fact.

## PROCEEDINGS

*Pleadings*

Buyer filed a complaint against Developer-Seller and Does 1 through 1,000 on May 17, 2004. On October 15, 2004, Buyer filed a first amended complaint (FAC) that included claims for negligence, strict liability, breach of contract, breach of implied and express warranty, bond liability, express contractual indemnity, and concealment arising out of the construction and sale of the Apartments.

Buyer alleged that Developer-Seller and the Doe defendants defectively built the Apartments and their work was so defective that it "was of a quality amounting to reckless disregard and/or willful misconduct."

Developer-Seller filed a cross-complaint, naming as cross-defendants over a dozen subcontractors that worked on the Apartments, including Western, Avila Cement and Weber-Iness Associates. Developer-Seller's operative pleading against the Subcontractors is its first amended cross-complaint for declaratory relief, implied equitable indemnity, and express contractual indemnity, which was filed October 6, 2006 (Cross-Complaint).

The Cross-Complaint does not use the term "willful misconduct," but does incorporate by reference the allegations of the FAC. Further details regarding the allegations of the FAC and the Cross-Complaint are set forth in part III.B., *post*.

*Motions for Summary Judgment*

In February 2007, Developer-Seller and Western both filed motions for summary judgment. Developer-Seller asserted the claims in Buyer's FAC were barred by the 10-year statute of limitations set forth in section 337.15.

Similarly, Western asserted Developer-Seller's Cross-Complaint against it was barred by section 337.15 because the FAC and Cross-Complaint were filed more than 10 years after completion of the Apartments.

The superior court chose to hear Developer-Seller's motion for summary judgment before Western's motion for summary judgment.

### Developer-Seller's Motion

Buyer opposed Developer-Seller's motion for summary judgment by contending that the 10-year limitations period does not apply (1) in cases of willful misconduct, (2) to persons in actual possession or control of the property at any time a defect proximately causes damage to the property, or (3) in cases of fraudulent concealment. Buyer also disputed that notices of completion were filed in 1990 and 1991 on the grounds that the notices constituted hearsay and had not been properly authenticated, and that judicial notice could not be taken of their contents.

Buyer also submitted the declaration of Posard to support its argument that a triable issue of material fact existed regarding whether Developer-Seller's actions constituted willful misconduct.

In May 2007, the superior court determined (1) Developer-Seller had not met its burden of establishing when the Apartments were substantially completed and (2) triable issues of material fact existed regarding the willful misconduct exemption and the owner-in-possession exemption from the 10-year statute of limitations. Specifically, the court stated Buyer raised a triable issue of fact regarding whether Developer-Seller's failure to install flashing amounted to willful misconduct. The court denied Developer-Seller's motion for summary judgment but granted summary adjudication as to four of the 13 causes of action in the FAC.

### Subcontractors' Summary Judgment Motions

In June 2007, the superior court heard the Subcontractors' motions for summary judgment. The court sustained evidentiary objections regarding foundation and authenticity made by Developer-Seller to the copies of the notices of completion submitted by the Subcontractors in support of their motions. Based on its evidentiary rulings regarding the notices of completion, the court concluded that the Subcontractors had failed to establish that the 10-year limitations period expired before the filing of the complaint. Therefore, the court denied the Subcontractors' motions for summary judgment.

On July 2, 2007, Avila Cement filed a petition for a writ of mandate with this court (*Avila Cement v. Superior Court* (Aug. 2, 2007, F053192)), asserting that the superior court had erred by excluding the notice of completion from evidence. On July 10, 2007, this court issued an alternative writ directing the superior court either to show cause why the requested relief should not issue or to (1) set aside its June 2007 order denying the motion to take judicial notice and its related order denying Avila Cement's motion for summary judgment; (2) grant the motion for judicial notice; and (3) thereafter, reconsider the motion for summary judgment.

On July 20, 2007, the superior court responded to the alternative writ by taking judicial notice of the notices of completion and finding the Apartments were substantially completed on October 31, 1990, and May 1, 1991. Based on this finding and the filing dates of the pleadings, the court concluded the statute of limitations had run on the Cross-Complaint. It then granted the three Subcontractors' motions for summary judgment.

In August 2007, Developer-Seller filed a motion for reconsideration of the order granting the Subcontractors' motions for summary judgment. Buyer attempted to join in the motion for reconsideration. Both Developer-Seller and Buyer argued the superior court had failed to consider the willful misconduct exception to the 10-year limitations period.

The superior court denied the motion for reconsideration based on procedural grounds and the following three conclusions. First, Developer-Seller could not rely on the exemption in section 337.15, subdivision (f) because the Cross-Complaint made no allegations of willful misconduct. Second, Developer-Seller provided no evidence that the Subcontractors were guilty of willful misconduct or concealment. Third, section 337.15, subdivision (f) does not apply to cross-complaints for indemnity.

Both Buyer and Developer-Seller challenged the order granting Subcontractors' motions for summary judgment by filing petitions for writs of mandate with this court. Both petitions were summarily denied.

*Motion for Fees and Costs*

In August 2007, Avila Cement, having prevailed on its motion for summary judgment, filed a motion for attorney fees and costs pursuant to section 1038. The motion asserted Developer-Seller's Cross-Complaint was brought and maintained without good faith or reasonable cause.

In September 2007, Weber-Iness Associates also filed a motion for attorney fees and costs pursuant to section 1038.

The superior court granted the section 1038 motions for attorney fees and costs. It awarded Avila Cement $21,233.64 and Weber-Iness Associates $31,278.75.

*Appeal*

Buyer asserts that its appeal challenges the July 20, 2007, order granting Western's motion for summary judgment.

Developer-Seller's notice of appeal challenges the July 20, 2007, order granting the three Subcontractors' motions for summary judgment, and the related judgment, as well as the orders and judgment awarding Avila Cement and Weber-Iness Associates attorney fees and costs pursuant to section 1038.

## DISCUSSION

I. *Standard of Review*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *The 10-year Limitations Period and Willful Misconduct Exemption*

 A. *Statutory Provisions*

Section 337.15 provides in relevant part: "(a) No action may be brought to recover damages from any person . . . who develops real property or performs or furnishes the design . . . or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design . . . or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency."

This 10-year limitations period is subject to exemptions. For example, subdivision (c) of section 337.15 states: "As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section."[3]

---

[*]See footnote, *ante*, page 1.

[3] Section 428.10, subdivision (b) allows a party to assert: "Any cause of action he has against a person alleged to be liable thereon, whether or not such person is already a party to

Subdivision (f) of section 337.15 provides: "This section shall not apply to actions based on willful misconduct or fraudulent concealment."

## B. *Contentions of the Parties*

Buyer contends the superior court erred in concluding the exemption contained in subdivision (f) of section 337.15 does not apply to cross-complaints for indemnity. Buyer and Developer-Seller argue the term "action" used in subdivision (f) of section 337.15 should be interpreted to include cross-complaints for indemnity.

In contrast, Subcontractors contend that they are protected by the 10-year limitations period set forth in section 337.15. In addition to arguing in favor of the superior court's interpretation of subdivision (f), they assert the willful misconduct exemption does not apply to Developer-Seller's Cross-Complaint for indemnity because that pleading did not specifically allege willful misconduct.

## C. *Analysis*

### 1. *Background on section 337.15*

Generally, a lawsuit alleging a latent construction defect must be brought within three or four years (depending on the theory of recovery) after the plaintiff discovers, or should have discovered, the defect. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 366 [2 Cal.Rptr.3d 655, 73 P.3d 517] (*Lantzy*).) In 1971, the Legislature capped the open-ended nature of this discovery rule by enacting section 337.15, which "established a further general rule that no action for latent construction defects may be commenced more than 10 years after 'substantial completion' of the construction project. [Citation.] This 'absolute' 10-year limitations period applies regardless of when the defect was discovered." (*Lantzy*, at p. 366, fn. omitted.)

The California Supreme Court's use of quotation marks around the word "absolute" in *Lantzy* indicates that the 10-year limitations period cannot be regarded as absolute in all contexts. For example, "[s]ection 337.15 itself provides several clear exemptions from the 10-year limit" (*Lantzy, supra*, 31 Cal.4th at p. 373), and our high court has recognized that a party might be equitably estopped from asserting that the 10-year period has expired (*id.* at p. 367).

---

the action, if the cause of action asserted in his cross-complaint (1) arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause brought against him or (2) asserts a claim, right, or interest in the property or controversy which is the subject of the cause brought against him."

The two statutory exemptions relevant to our analysis are contained in subdivisions (c) and (f) of section 337.15.

### 2. Case law

Both Buyer and Developer-Seller rely on *Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278 [28 Cal.Rptr.3d 92] (*Acosta*) in support of their interpretation of subdivision (f) of section 337.15.

In *Acosta*, the plaintiffs sued a developer/general contractor for construction defects in their homes. The developer/general contractor, in turn, sued various subcontractors for indemnification and on other theories. (*Acosta, supra*, 128 Cal.App.4th at p. 1285.) The developer/general contractor moved for summary judgment on the ground that the plaintiffs' complaint was filed more than 10 years after substantial completion of their homes. The trial court determined that subdivision (f) of section 337.15 did not apply and granted the developer/general contractor's motion. (*Acosta, supra*, at p. 1285.) As a result, the trial court also granted the subcontractors' motion for summary judgment; the subcontractors could not be liable for indemnification when the developer/general contractor had prevailed against the plaintiffs. (*Id.* at pp. 1286–1287.)

The Court of Appeal reversed the trial court's order granting the developer/general contractor's motion for summary judgment. (*Acosta, supra*, 128 Cal.App.4th at p. 1304.) The court concluded there was sufficient evidence in the record that a trier of fact could find (1) the subcontractors engaged in acts of willful misconduct in the construction of the plaintiffs' homes and (2) the facts and circumstances justified charging the developer/general contractor with the subcontractors' willful misconduct. (*Id.* at pp. 1301–1302.) The court partially based its conclusion on the declarations of the plaintiffs' experts. Those declarations identified many alleged defects, stated that the defects involved conspicuous failures to comply with the building code, and expressed the opinion that the defects could not be present without the tacit or express approval of the developer/general contractor. (*Id.* at pp. 1288–1289.)

The court also reversed the summary judgment in favor of the subcontractors on the ground that the reinstatement of the plaintiffs' claim against the developer/general contractor created the possibility that the subcontractors would be liable to indemnify the developer/general contractor. (*Acosta, supra*, 128 Cal.App.4th at p. 1303.) The Court of Appeal declined to consider the substantive arguments raised by the subcontractors in support of their motions, concluding that the trial court should address those arguments in the first instance. (*Id.* at p. 1304.)

Because the court in *Acosta* did not address the merits of the subcontractors' motions, we conclude that it did not actually decide whether the exemption in subdivision (f) of section 337.15 applied to cross-complaints for indemnity that alleged willful misconduct.

Furthermore, the parties have cited, and we have located, no published opinion by a California court that has decided this issue of statutory construction.

### 3. *Application of statutory definitions*

We will determine the meaning of subdivision (f) of section 337.15 by referring to various definitions set forth in the Code of Civil Procedure.

First, we return to subdivision (c) of section 337.15 because it appears to provide a partial definition of the word "action." Subdivision (c) states in full: "As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section."[4]

The California Supreme Court has interpreted the first portion of subdivision (c) of section 337.15 to refer only to direct actions for indemnity. (*Valley Circle Estates v. VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 611 [189 Cal.Rptr. 871, 659 P.2d 1160].) It has interpreted the second portion of subdivision (c)—the portion that begins "except that"—as "clearly allow[ing] those parties who cannot be reached in a direct action to nonetheless be reached in a derivative action for indemnity pursuant to a cross-complaint brought in a direct action which has been timely filed under subdivision (a)." (*Valley Circle Estates*, at pp. 610–611.)

The California Supreme Court's description of the second portion of subdivision (c) of section 337.15 contradicts Subcontractors' position that the term "action" excludes a cross-complaint for indemnity. Instead, the language used by our Supreme Court makes it clear that an indemnity claim pursued through a cross-complaint is an action, albeit a "derivative action" rather than a "direct action." (*Valley Circle Estates v. VTN Consolidated, Inc., supra*, 33 Cal.3d at p. 610.)

---

[4] Subdivision (c) of section 337.15 thus alters the common law rule that a cause of action for equitable indemnity does not accrue until the indemnitee has suffered an actual loss by paying a judgment or settlement. (*Lantzy, supra*, 31 Cal.4th at p. 378, fn. 12.)

Second, nothing in any portion of section 337.15 or the materials cited by the parties demonstrates that the Legislature intended to limit the willful misconduct exemption in subdivision (f) to *direct* actions and to subject *derivative* actions alleging willful misconduct to the 10-year limitations period. Further, common sense dictates that the term "action" used in subdivision (f) of section 337.15 applies to all actions, whether direct or derivative. If the term "action" in subdivision (f) were interpreted to mean only direct actions, then the Cross-Complaint would have been time-barred, but Developer-Seller still could pursue an indemnity claim based on willful misconduct in an exempt direct action. Accordingly, we will not interpret the term "action" to mean only direct actions. We can identify no policy reason for barring the use of cross-complaints when the same claim could be pursued in a direct action.

Third, the interpretation that the term "action" includes both direct and derivative actions is compatible with the rule of statutory construction that a court should not construe a statute to "insert what has been omitted" by the Legislature. (§ 1858.) In this case, it would violate section 1858 to construe subdivision (f) of section 337.15 to cover only "direct actions" when the Legislature omitted the modifier "direct" from the statutory text.

Fourth, our construction of section 337.15 also is consistent with the general provisions of the Code of Civil Procedure that define the terms "action," "civil action," and "pleading."

Initially, we note that section 21 identifies an action as one of two classes of judicial remedies—the other class is special proceedings. Section 22 sets forth the general definition of "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Under this broad definition, two kinds of action exist—civil and criminal. (§ 24.) Section 30 defines a civil action as one "prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong."

In this case, Developer-Seller is proceeding in a court of justice by prosecuting the Subcontractors for a declaration of its right to indemnity. Thus, for purposes of section 30, Developer-Seller is pursuing a civil action against the Subcontractor. It necessarily follows that Developer-Seller is pursuing an action for purposes of section 22.

Furthermore, section 422.10 provides that "[t]he pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints." Thus, a cross-complaint is a type of pleading—that is, it is a document used

to pursue an action, not the action itself. As a result, the term "action" cannot be interpreted to exclude claims pursued through a cross-complaint.

Based on the foregoing, we conclude the exemption from the 10-year statute of limitations for "actions based on willful misconduct" (§ 337.15, subd. (f)) applies to derivative actions for indemnity that are pursued using a cross-complaint.

## III. Incorporation by Reference to the Complaint

### A. Contentions of the Parties

Developer-Seller contends that the trial court erred in concluding that the Cross-Complaint "makes no allegations of willful misconduct" and granting summary judgment on that basis.

Developer-Seller's contention is based on the following grounds: (1) the Cross-Complaint effectively alleged willful misconduct against Subcontractors by incorporating by reference Buyer's FAC and (2) Subcontractors waived the issue regarding the sufficiency of the Cross-Complaint by failing to raise their challenge during the pleading stage. Buyer adds the arguments that (1) physically attaching a copy of the FAC to the Cross-Complaint was not required, (2) Western was on notice that the factual allegations in the FAC formed the basis for the Cross-Complaint and (3) "any doubt as to which 'causes of action . . . are irrelevant' can easily be resolved (and were resolved) through discovery."

Noting that the Cross-Complaint contained no specific allegations of willful misconduct, Subcontractors argue that the incorporation by reference of Buyer's FAC into the Cross-Complaint was insufficient to allege willful misconduct and to provide adequate notice of the claim against them. Weber-Iness Associates and Western further contend that Buyer never filed actions against Weber-Iness Associates and Western or amended its FAC to add them as Doe defendants.

### B. Contents of the Pleadings

The operative pleadings central to this issue are Buyer's FAC filed October 15, 2004, and Developer-Seller's Cross-Complaint filed October 6, 2006.

The relevant paragraphs within the FAC come under the heading, "FIRST CAUSE OF ACTION Against the Developers and Contractors for Negligence." In paragraph 13 of the FAC, Buyer describes "Defendants Does 201

through 500" as "sometimes collectively referred to as the 'Contractors' " and those who "designed, engineered, surveyed, provided specifications for, tested, graded, prepared the site for, assembled, manufactured, installed, supervised and provided other services and work related to the construction of the Property." Paragraph 14 of the FAC alleges: "Defendants so negligently and defectively developed, constructed and provided the services, work and materials for the Property, as described above, as to directly cause numerous and pervasive defects and damages throughout the Property (the 'Deficiencies')." In paragraph 15 of the FAC, Buyer alleges: "Defendants' conduct, as above described, was of a quality amounting to reckless disregard and/or willful misconduct. In developing, constructing and providing the services, work and materials for the Property, as above described, defendants intentionally performed acts of an unreasonable character in disregard of risks known to them and/or so obvious that they must have been aware of them, and so great as to make it highly probable that harm in the nature of the Deficiencies would follow." Paragraphs 13, 14, and 15 were incorporated by reference into each cause of action contained in Buyer's FAC.

Paragraph 18 of the Cross-Complaint, under the heading "GENERAL ALLEGATIONS," states: "On or about October 15, 2004, [Buyer] filed a first amended complaint (the 'Complaint') herein against [Developer-Seller]s seeking damages for negligence, strict liability, breach of contract, breach of implied warranty, breach of express warranty, bond liability, express contractual indemnity, and concealment. These claims arise out of the construction of an apartment complex located at 353 and 373 West Nees Avenue in Fresno, California (the 'Project'). *The Complaint is incorporated herein by reference without admitting any of the allegations contained therein.*" (Italics added.)

### C. *Applicable Rule of Law*

■ "The phrase 'incorporation by reference' is almost universally understood, both by lawyers and nonlawyers, to mean the inclusion, within a body of a document, of text which, although physically separate from the document, becomes as much a *part* of the document as if it had been typed in directly." (*Republic Bank v. Marine Nat. Bank* (1996) 45 Cal.App.4th 919, 922 [53 Cal.Rptr.2d 90].)

The statutory pleading requirements in the Code of Civil Procedure do not explicitly address the practice of incorporation by reference. The general requirement that a complaint or cross-complaint contain a "statement of the facts constituting the cause of action, in ordinary and concise language"

(§ 425.10, subd. (a)(1)) offers little guidance.[5] Furthermore, the California Rules of Court do not specifically address incorporation by reference used at the pleadings stage.

Case law, however, does address the practice: "The general rule is that in the absence of restrictions imposed by statute or by rules of court, facts alleged in other pleadings in the same case may be incorporated by reference in subsequent pleadings therein. [Citations.]" (*Estate of Dargie* (1939) 33 Cal.App.2d 148, 157 [91 P.2d 126].)

Courts have applied this general rule to cross-complaints. "[A] cross-complaint must itself be sufficient and cannot be cured by the pleadings in the original action, that is, the complaint and answer, apart from permissible incorporation by reference." (*Berg v. Investors Real Estate Loan Co.* (1962) 207 Cal.App.2d 808, 816 [24 Cal.Rptr. 701].)

In *Turney v. Collins* (1941) 48 Cal.App.2d 381 [119 P.2d 954], the pleader in an amended answer and counterclaim incorporated by reference certain exhibits pleaded in the original answer. The court concluded there was "not the slightest reason" for holding that a pleading could not incorporate by reference an exhibit or allegation found in another pleading in the same case, even though the pleading has been superseded by such later pleading. (*Id.* at p. 388.)

One practice guide states that it generally is not good practice to incorporate by reference parts of other pleadings in the same lawsuit, even though there is no rule against it. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 6:239, p. 6-66 (rev. # 1, 2007).) The practice guide modifies this advice as follows: "One noteworthy exception: *Cross-complaints for indemnification* usually incorporate by reference the allegations of the complaint as a 'shorthand' way of showing the existence of the claim for which indemnification is sought." (*Ibid.*)

D. *Analysis*

Based on the authorities discussed above, we agree with Developer-Seller's contention that the Cross-Complaint effectively alleged willful misconduct against Subcontractors by incorporating by reference Buyer's FAC.

Furthermore, our examination of the contents of the relevant pleadings in this case convinces us that the allegations incorporated by reference state that the Subcontractors engaged in willful misconduct.

---

[5] The policy underlying this requirement "is to inform the parties within reasonable limits of the nature of the action pending and the issues involved." (*Casaretto v. De Lucchi* (1946) 76 Cal.App.2d 800, 806 [174 P.2d 328].)

Paragraph 13 of the FAC describes Doe defendants as "Contractors," who, in addition to performing the specific enumerated tasks listed in the paragraph, "provided other services and work" related to the construction of the project. Paragraph 14 refers to defendants[6] who "so negligently and defectively developed, constructed and provided the services, work and materials for the Property . . . as to directly cause numerous and pervasive defects and damages . . . ." Paragraph 15 of the FAC describes defendants' conduct as of a quality amounting to reckless disregard and/or willful misconduct, again using the language "providing the services, work and materials for the Property" and setting forth the elements for willful misconduct. These three paragraphs are incorporated by reference into each cause of action in Buyer's FAC. The Cross-Complaint then incorporates by reference the entire FAC via the general allegations set forth in paragraph 18. Based on the language contained in both the FAC and Cross-Complaint, Subcontractors had sufficient notice that the indemnification claims against them included willful misconduct as a theory of recovery. The statutory requirement that a cross-complaint contain a statement of the facts constituting the cause of action in ordinary and concise language was satisfied.

### E. Conclusions

We conclude that the general rule of law applicable to pleadings permits the Cross-Complaint to incorporate by reference allegations contained in the FAC. The FAC alleges that defendants—a term defined broadly enough to include the Subcontractors—engaged in willful misconduct. It follows that the Cross-Complaint contains an indemnification claim based on willful misconduct.

We concluded earlier that the 10-year limitations period for latent construction defects does not apply to an indemnification claim based on willful misconduct and pursued using a cross-complaint. (§ 337.15, subd. (f).) Therefore, we further conclude that the Cross-Complaint asserts a theory of recovery that is not barred by the 10-year limitations period set forth in section 337.15. Consequently, the order granting the Subcontractors' motions for summary judgment cannot be upheld on statute of limitations grounds.

IV., V.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6] Defendants include Developer-Seller and Does. The FAC's description of Does is broad enough to include Subcontractors.

[*] See footnote, *ante,* page 1.

## DISPOSITION

The judgment in favor of cross-defendants Western, Avila Cement, and Weber-Iness Associates is reversed. The matter is remanded to the superior court for further proceedings and with directions to (1) vacate its July 20, 2007, order granting cross-defendants' motions for summary judgment and (2) vacate its orders granting the motions of Avila Cement and Weber-Iness Associates for attorney fees and costs pursuant to section 1038.

Plaintiff and defendants/cross-complainants shall recover their costs on appeal.

Levy, Acting P. J., and Hill, J., concurred.

On February 6, 2009, the opinion was modified to read as printed above.