[No. G014963. Fourth Dist., Div. Three. Apr. 23, 1996.]

REPUBLIC BANK, Plaintiff and Appellant, v.
MARINE NATIONAL BANK, Defendant and Respondent.

920

COUNSEL

Sullivan, Hill, Lewin & Markham, Candace M. Carroll and Jeffrey J. Merrick for Plaintiff and Appellant.

Fabozzi, Prenovost & Normandin, Michael G. Dawe and Thomas Prenovost for Defendant and Respondent.

OPINION

SILLS, P. J.—

## INTRODUCTION

Republic Bank leased space in an Irvine office building from the Koll Company. The lease had an attorney fee clause, which provided that if any lawsuit arose between the two parties, the "successful" party would recover its attorney fees.

Republic then subleased some of the space to Marine National Bank. The sublease did *not* contain an attorney fee clause. However, the sublease incorporated the master lease between Republic and Koll by reference.

Marine failed to pay rent on its sublease, so Republic sued and prevailed. But the trial court did not award Republic attorney fees, reasoning that the sublease did not "specifically" provide for attorney fees under Civil Code section 1717,[1] and to award fees would improperly "bootstrap" the attorney fee provision in the master lease onto the sublease agreement.

The trial court erred. The phrase "incorporation by reference" makes the document referred to part of the contract *as if it were recited verbatim*. So incorporated, the sublease thus "specifically" provided for attorney fees. Marine's alternative definitions of the words "incorporation by reference" are not reasonable.

## FACTS

The facts are undisputed. On January 29, 1982, Republic entered into a 25-year master lease with Koll Center Irvine for the ground floor of an office building located at 18401 Von Karman in the City of Irvine. On August 9, 1983, Republic subleased slightly under one-half of the Von Karman ground floor office space to Marine.

The master lease between Republic and Koll had an attorney fee clause in section 15.08, which provided: "[I]n the event of any action at law or in equity between Landlord and Tenant to enforce any of the provisions and/or rights hereunder, the unsuccessful party to such litigation covenants and agrees to pay to the successful party all costs and expenses, including reasonable attorney's fees incurred therein by such successful party, which shall be included in and as part of such judgment."

The "incorporation by reference" language in the sublease between Republic and Marine is set forth in section 1.02 of that document: "[A] copy of the Master Lease is attached hereto as Exhibit 'C' and incorporated herein by this reference. Sub-Tenant agrees not to violate, cause to be violated, or cause Sub-Landlord to be in violation of, the terms, covenants and conditions of the Master Lease and further agrees that the terms of this Lease shall be subject and subordinate to the Master Lease."

---

[1] Civil Code section 1717, subdivision (a), provides in part: "In any action on a contract, where the contract *specifically* provides that attorney's fees and costs . . . shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees . . . ." (Italics added.)

By the middle of 1992, Marine had fallen behind on the rent under its sublease. Accordingly, on August 13, 1992, Republic filed suit against Marine for breach of contract, seeking damages and attorney fees. During the pendency of the litigation Marine paid to Republic $69,689.55, which represented full payment for damages including interest but not the attorney fees. That left only the issues of liability (which, despite its payment, Marine did not concede) and attorney fees.

As it turned out, when the case came to trial Marine conceded liability, so the entire trial centered on the attorney fee issue. On that point Republic lost. ■ The court ruled that Republic should not recover attorney fees because the sublease did not specifically contain an attorney fee provision; the court was unwilling to use a "bootstrap approach" to incorporate the attorney fee provision of the master lease into the sublease. Republic now appeals from the subsequent order denying attorney fees.

## DISCUSSION

The phrase "incorporation by reference" is almost universally understood, both by lawyers and nonlawyers, to mean the inclusion, within a body of a document, of text which, although physically separate from the document, becomes as much a *part* of the document as if it had been typed in directly. To "incorporate," after all, literally means to put *into a body*. A standard layperson's dictionary, Webster's Third New International (1981) even has a separate entry for "incorporation by reference." Webster defines the phrase as a "doctrine in law" where "the terms of a contemporaneous or earlier writing, instrument, or document capable of being identified can be made *an actual part* of another writing, instrument, or document by referring to, identifying, and adopting the former as a part of the latter." (Webster's Third New Internat. Dict. (3d ed. 1981) p. 1145, italics added.) Likewise, the more specialized Black's Law Dictionary (5th ed. 1979) page 690, defines the phrase to mean "[t]he method of making one document of any kind *become a part* of another separate document by referring to the former in the latter, and declaring that the former shall be taken and considered as a part of the latter the same as if it were fully set out therein." (Italics added.)

As one might expect, courts have not deviated from the dictionary definition. In *Nevin* v. *Salk* (1975) 45 Cal.App.3d 331 [119 Cal.Rptr. 370], appellant received two promissory notes in partial payment for the sale of his business. The notes contained provisions for the payment of attorney fees to the prevailing party in the event of suit. Although the sale agreement did not provide for attorney fees, the agreement specified that the $146,000 promissory note was "incorporated therein by reference." (*Id.* at p. 338.) The

court held that "[i]nasmuch as the provisions of the notes and the security instruments were incorporated in the agreement, and made a part thereof . . . the trial court properly concluded all the instruments formed a single contract and the fact the agreement itself contained no provision for payment of fees . . . is of no consequence." (*Ibid.*)

Similarly, in *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 357 [175 Cal.Rptr. 226], the court held that appellants were bound by the bylaws of their real estate board, including a duty to arbitrate as set forth in an arbitration manual which was "incorporated" in the bylaws by reference. The court said that "[a] secondary document becomes part of a contract as though recited verbatim when it is incorporated into the contract by reference provided that the terms of the incorporated document are readily available to the other party." (*Ibid.*; see *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 641-642 [223 Cal.Rptr. 838]; *Bell* v. *Rio Grande Oil Co.* (1937) 23 Cal.App.2d 436, 440 [73 P.2d 662] ["A written agreement may, by reference expressly made thereto, incorporate other written agreements; and in the event such incorporation is made, the original agreement and those referred to must be considered and construed as one."]; see also *Beedy* v. *San Mateo Hotel Co.* (1915) 27 Cal.App. 653, 660-661 [150 P. 810]; *Holbrook* v. *Fazio* (1948) 84 Cal.App.2d 700, 701 [191 P.2d 123].)

Against such a host of authority—ordinary dictionary meaning and case law—one is hard pressed to suppose how Marine can possibly contend the terms of the master lease between Republic and Koll were not made an *actual part* of the sublease. After all, if the phrase does not mean *that*, what does it mean?

Marine is not quite clear on the answer to the latter question. There are two alternative meanings suggested in Marine's brief. They are: (1) "The incorporation by reference of the Master Lease serves the practical function of certifying that the Sub-tenant's acknowledgment of the subordinate status of the Sublease to the Master Lease is a knowing and informed acknowledgment." (2) "When referring to a document extraneous to the contract in which they appear, they [the words, "incorporation by reference"] metaphorically grasp the referenced document and place it, for *reference* purposes, within the contract in which they appear."

To cut through the "metaphorical"[2] haze, these alternative definitions may be translated as follows: (1) the master lease was attached to the sublease to make sure that the sublease was "subordinate" to it; and (2) attaching the master lease to the sublease was a nice convenient way to refer to it.

---

[2] One might well ask, "what metaphor?" Few phrases outside of the Internal Revenue Code are more stolid and less metaphorical than "incorporation by reference."

These alternative definitions reveal the fallacy in Marine's position. It is treating the word "incorporate" as if it were just another name for "attach." It is not. Yes, one can staple a master lease to a sublease and refer to it in the text of the sublease to make sure all parties to the sublease are aware of the master lease. Yes, having it so stapled makes it easier to refer to. But stapling, physical attachment or even textual reference does not begin to encompass the meaning of the word *incorporation*, with its denotation of putting something into a body, not just next to it.

The absence of any meaningful alternative definition of the phrase incorporation by reference disposes of Marine's ambiguity argument. " 'A contract is ambiguous when on its face it is capable of two different reasonable interpretations .' " (*Atchison, T.& S.F. Ry. Co.* v. *Brotherhood R.R. Trainmen* (1964) 229 Cal.App.2d 607, 614 [40 Cal.Rptr. 489], citing *Pederson* v. *Fiksdal* (1960) 185 Cal.App.2d 30, 34 [7 Cal.Rptr. 874].) Marine's proffered alternatives are not reasonable.

Marine also misses the point in contending that the cases cited by Republic in its opening brief involving relationships other than sublessor-sublessee or contracts other than leases are inapposite. Since the language used governs a contract's interpretation (Civ. Code, § 1638), it is the relevant language, not the relationship between the parties, that is critical.[3]

Marine finally points to the provisions in the sublease which differ from corresponding provisions in the master lease, and the fact the master lease has an integration clause. From these items Marine asks us to draw the conclusion that the parties did not intend "that their relationship be governed as if they were also parties to the Master Lease."

The fallacy here is false dichotomy. Marine assumes that it is an all-or-nothing proposition as to whether *any* provisions of the master lease could

---

[3]For example, in *Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266 [8 Cal.Rptr.2d 587], a youth group entered into a contract with a construction company to construct a recreation facility. The contract contained an arbitration clause requiring arbitration of disputes between the contractor and owner. The contractor obtained a performance bond from a surety company. Although the bond did not include an arbitration agreement, it incorporated the contract by reference. In a dispute between the youth club and the contractor, the youth club filed a demand for arbitration and subsequently named the surety as an additional party to the arbitration. The surety resisted, claiming that it was not a party to the contract and did not sign an agreement to arbitrate. Reversing the trial court's denial of the petition to compel arbitration, the court said that "[a]n agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference. . . ." (*Id.* at p. 1271, citations omitted.) The court held that the *language* in the bond incorporating the contract bound the surety to the arbitration clause, even though the surety was not a party to the original contract. (*Id.* at p. 1273; cf. *Pacific Employers Ins. Co.* v. *City of Berkeley* (1984) 158 Cal.App.3d 145, 152 [204 Cal.Rptr. 387].)

govern the relationship between the parties to the sublease. It is a non sequitur, however, to conclude that just because there may be overlapping or even inconsistent provisions in the sublease and the master lease that the parties *necessarily* intended that *no* provisions of the master lease *could possibly* be incorporated into the sublease.

The trial court was not concerned with the relationship between Koll and Republic spelled out in the master lease, but what Marine and Republic had agreed to in the sublease. The fact that there were overlapping terms might be of interest if the case had turned on one of those terms, but, as Marine reminds us, there was no attorney fee clause in the sublease. There was thus nothing in the sublease to cast any doubt on the nature of the attorney fee clause in the master lease. Under such circumstances, and in light of the incorporation by reference language, whatever else the combined sublease/master-lease package may have provided for, it certainly provided for attorney fees as delineated in the relevant clause in the master lease.

The trial court's determination that Civil Code section 1717 did not require an award of attorney fees was predicated on the assumption that the sublease did not incorporate the master lease's attorney fee provision. As we have shown, that assumption was in error: as it turns out, the sublease *did* "specifically" provide for attorney fees. The judgment is reversed. Republic is to recover its costs on appeal.

Wallin, J., and Rylaarsdam, J., concurred.