Filed 12/22/20  McKinley Home Foundation v. West Hills Construction CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MCKINLEY HOME FOUNDATION et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>WEST HILLS CONSTRUCTION, INC.,<br><br>Defendant and Respondent. | B292720<br><br>(Los Angeles County Super. Ct. No. KC069072) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daniel Thomas Oki, Judge.  Reversed.

Kassouni Law and Timothy V. Kassouni for Plaintiffs and Appellants.

Ropers Jajeski, Terry Anastassiou, Tim M. Agajanian, and German A. Marcucci for Defendant and Respondent.

————————————————

Plaintiffs and appellants McKinley Home Foundation (Foundation) and McKinley Children's Center, Inc. (Children's Center) (collectively appellants) sued West Hills Construction, Inc. (respondent) for, inter alia, breach of warranty after the failure of a solar power system that respondent installed. The trial court granted summary judgment for respondent, concluding that the warranty was unambiguous and did not apply because the solar power system and its failed components were supplied by a third party. We reverse summary judgment because the warranty was ambiguous, and there are triable issues as to what the warranty covers.

## FACTS

### The Pleadings

Appellants sued respondent and eventually filed an amended complaint. They both alleged causes of action for breach of warranty and breach of contract, and Children's Center alleged a cause of action for breach of contract on a third-party beneficiary theory.

The amended complaint averred:

Foundation contracted with respondent to install a solar power system at the Children's Center campus. "The solar energy system was largely manufactured and supplied by GreenVolts, Inc. [(Greenvolts)]. [Greenvolts] has since filed [for] bankruptcy and has been liquidated. [Respondent] supplied any additional components necessary for installation that were not supplied by [Greenvolts], including the wiring, its associated conduit, and the racking system needed to hold the solar panels." Respondent warranted that the solar energy system would be free from defects and would experience less than a 15 percent reduction in power output for a period of 10 years. The

2

installation was completed in May 2012. "Over 20 of the [solar] panels completely failed by April 2015 and many more of them were operating at half power. Additionally, investigators found burn marks on a number of the inverters. The panels and inverters experienced internal stresses, thermal cycling, and possible surges that contributed to an imbalance in the solar system when the panels failed. This imbalance caused the entire system to fail." As a consequence, appellants suffered various types of damage.

The parties' contract was attached to the amended complaint as an exhibit. It provided certain milestones, two of which stated "GV Equipment dropped on-site (Joint Checks to [respondent] & [Greenvolts])" and "Greenvolts Equipment Installation Completed." A description of the project, the materials to be used and the equipment to be installed was set forth in a portion of the contract entitled Scope of Services for Renewable Energy Power System (Scope of Services).

The Scope of Services listed the job site and identified the "System Size" as "419.879 kw CEC-AC PV System, with Turn-Key installation at customer's site." (Emphasis omitted.) It listed "Major System Components" and identified Greenvolts as the "Module Manufacturer" and the "Inverter Manufacturer." (Emphasis omitted.) The standard components were "[r]acking and mounting components," and "over-current protection . . . , Roofing sealant or flashing as needed." Appellants initialed the portion of the Scope of Services indicating that it was separately purchasing the "Greenvolts Monitoring Package with Revenue Grade Monitoring and Weather package."

Next, the Scope of Services identified the standard labor as, inter alia: system design; securing of permit; "[i]nstall specified

3

system in good workmanlike manner;" and "[c]omplete and submit utility interconnection documents sufficient for [Children's Center] to export energy to Southern California Edison[.]"

The warranty stated that "all components of the [solar] power system that [respondent] provides to [appellants], other than the meter, will be free from defects in the components and workmanship and a reduction in power output by more than fifteen (15) percent for a period of ten (10) years from the date of installation; the meter will be free from defects in the components and workmanship for a period of one (1) year from the date of installation. The warranty is limited to the following components of the power system: photovoltaic (PV) panels, inverters, solar collectors, tracking mechanisms, heat exchangers, pumps, heat-driven cooling systems associated with the system, and the meter. This warrants at the time of commissioning, [Greenvolts] will specify the expected power output for the Equipment and shall be the Site Expected Power. Greenvolts warrants that if, within twenty (20) years from the original date of commissioning, the Site Actual Energy is less than the Site Guaranteed Energy (as defined by the full warranty provisions), Greenvolts will restore the Equipment through a method at the discretion of Greenvolts[] to a state capable of generating the Site Guaranteed Energy. Please see Greenvolts['s] System Warranty[.]" In the exclusions paragraph, the warranty stated: "The following exclusions apply to the . . . warranty: (1) Work performed by and materials provided by any person or entity other than [respondent] are not warranted[.]" Next, it stated, inter alia, "If any of the components covered by [respondent's] warranty . . . fails at any time during the warranty period, [respondent]

4

will, upon prompt written notice . . . make all repairs
. . . necessary[.]"

**Summary Judgment**

Respondent moved for summary judgment.  It claimed that Greenvolts manufactured and supplied all the "system constituents that [respondent] installed[, including] the solar panels, the tilting panel racks, and the power inverters." Further, respondent pointed out that appellants confirmed in discovery that the equipment that failed was the solar panels, the inverters, and the actuators that move the panels to align with the sun.  Per respondent, the warranty excluded Greenvolts's work and equipment and respondent could not be liable for the system failure.

In opposition, appellants argued that the warranty covered Greenvolts's equipment or was ambiguous as to its meaning. Alternatively, they argued that if the warranty excluded Greenvolts's equipment, then it was illegal because it violated Public Resources Code section 25782.  Separately, appellants argued that respondent breached the contract by failing to install a working solar energy system.  Finally, they accused respondent of spoliation of evidence due to the destruction of e-mails between respondent and Greenvolts.

The trial court granted the motion, ruling that the contract was unambiguous, and that Greenvolts warranted its equipment, not respondent.  The trial court rejected the spoliation of evidence accusation, accepting the evidence provided by respondent that the e-mails had been automatically deleted before the lawsuit was filed.

Judgment was entered for respondent.

This timely appeal followed.

5

## DISCUSSION

Appellants seek reversal on three grounds: there is a triable issue as to whether respondent's warranty excluded the failed components; a 10-year warranty was implied by law into the contract pursuant to Public Resources Code section 25782; and respondent was guilty of spoliation of evidence. Because we conclude that appellants are correct on the first issue, we conclude that summary judgment was improper. We need not reach the other issues.

## I. Standard of Review.

Summary judgment is reviewed de novo. (*Saelzler v. Advanced Group* (2001) 25 Cal.4th 763, 767.) Where, as here, the summary judgment motion pertained to contract interpretation and the parties did not offer extrinsic evidence to aid that interpretation, the trial court was empowered to grant summary judgment only if the contractual language is clear and unambiguous. (*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1499–1500.)

## II. Summary Judgment was Improper.

The pivotal question is whether the language in the parties' contract is ambiguous or unambiguous. We conclude that it is ambiguous. Consequently, the trial court erred when it granted summary judgment.

A. <u>Relevant Principles</u>.

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) But not every contract has a clear meaning. A contract is ambiguous on its face if it is capable of two reasonable interpretations. (*Republic Bank v. Marine Nat. Bank* (1996) 45 Cal.App.4th 919, 924.)

B.  Analysis.

On its face, the contract can reasonably be interpreted in two ways.

Read one way, the contract can be interpreted to mean that Greenvolts provided the failed panels and inverters, and that they were excluded from respondent's warranty, because: Greenvolts was identified as the manufacturer of the modules and inverters; the contract specified that Greenvolts would deliver the "equipment" and that appellants would pay Greenvolts by separate check; the contract alerted appellants to Greenvolts's warranty; and components provided by third parties were expressly excluded.

Alternatively, the contract can be interpreted to mean that the parties understood that respondent provided the failed components and therefore they were covered by the warranty. The warranty stated that respondent "warrants that all components of the [solar] power system that [respondent] provides to [appellants] . . . will be free from defects in the components and workmanship and a reduction in power output by more than fifteen (15) percent for a period of ten (10) years from the date of installation; the meter will be free from defects in the components and workmanship for a period of one (1) year from the date of installation."  The warranty was "limited to the following components of the power system:  photovoltaic (PV) panels, inverters, solar collectors, tracking mechanisms, heat exchangers, pumps, heat-driven cooling systems associated with the system, and the meter."  The warranty also stated, "If any of the components covered by [respondent's] warranty . . . fails at any time during the warranty period, [respondent] will, upon prompt written notice . . . make all repairs . . . necessary[.]"

In light of these conflicting reasonable interpretations, the contract is facially ambiguous as a matter of law. On remand, the onus will be on the parties and the trial court to resolve the ambiguity.

## DISPOSITION

The judgment is reversed. Appellants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT


8