Filed 9/19/24  Batshon v. Rangoon Ruby Investment CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NAJIB BATSHON et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br>RANGOON RUBY INVESTMENT, LLC,<br><br>    Defendant and Respondent. | A169307<br><br>(San Mateo County<br>Super. Ct. No. 21CIV01068) |

At issue in this commercial lease dispute is the validity of a written lease addendum granting the tenant three options to extend the lease for a total of 15 years.  The landlords, appellants Najib Batshon and Nadim Batshon, contended they never agreed to the addendum whereas the tenant, respondent Rangoon Ruby Investment, LLC (Rangoon Ruby), contended the landlords are bound by it.  Following a bench trial, the trial court ruled the addendum is valid and binding and entered judgment in the tenant's favor.  The landlords now appeal, and we affirm.

**BACKGROUND**

**The Declaratory Relief Action**

Najib Batshon and Nadim Batshon, the owners of a commercial building located in Belmont, California, brought suit for a single count of declaratory relief against their tenant, Rangoon Ruby Investment, LLC.

1

They alleged the existence of a dispute as to whether the parties' lease incorporated the terms of a proposed written addendum (entitled "Addendum A") pursuant to which Rangoon Ruby claimed a right to remain in possession of the property after the lease's five-year term had expired. The Batshons sought a declaration that the addendum was invalid and not binding because it required the parties' signatures and yet neither party signed it. They allegedly had not participated in its drafting, had not agreed to it, had so advised the tenant when presented with it and were unwilling to sign it. They alleged that Rangoon Ruby had created the proposed addendum unilaterally, after the parties had "failed to agree to amending the lease to include an option and the terms of the option."

**The Lease**

It is undisputed the parties entered into a signed written lease dated July 1, 2015, which is a standardized form contract promulgated by the AIR Commercial Realty Association. On page 1 of the form lease, there are two references to an Addendum A. The first is language next to a box that is checked stating, "If this box is checked, there are provisions in this Lease for the Base Rent to be adjusted. See paragraph _____." In the blank is a typewritten insertion that reads "See Addendum A." The second reference is in paragraph 1.11, entitled "Attachments," which states, "Attached hereto are the following, *all of which constitute a part of this Lease:* . . . . an Addendum consisting of Paragraphs 1 through 4." (Italics added.) Addendum A contains four paragraphs, as we shall discuss.

There is a third reference to Addendum A on page 11 of the form lease. Paragraph 39, entitled "Options," states: "Options. SEE ADDENDUM A. If Lessee is granted any Option, as defined below, then the following provisions shall apply: . . . ." Following that paragraph are subparagraphs 39.1 to 39.4,

2

which define "Option" to mean, among other things, "the right to extend or reduce the term of or renew this lease" and set forth terms governing options.

Paragraph 46 of the form lease states, "This Lease is not intended to be binding until executed and delivered by all Parties hereto."

Addendum A, which is the subject of the parties' dispute, states that it is "made part of this Lease dated July 1, 2015 for the Premises . . . [and] [i]f there are any conflicts between the Lease and this Addendum, the terms of this Addendum shall govern." It consists of four numbered paragraphs, the third of which provides for three options to extend the lease for five-year terms (for a total of 15 years) at a 10 percent rent increase for the first two option periods and a 15 percent increase for the third. It further states, "This Lease shall not be effective until and unless signed by all parties," and contains blank signature blocks for both parties.

The parties all signed the form lease and initialed each of its pages. However, it is undisputed that neither party signed the addendum.

**The Trial Testimony**

The case proceeded to a bench trial. Najib Batshon (hereafter Batshon[1]) testified that when Rangoon Ruby's agent, John Lee,[2] presented the document for his signature in July 2015, the only thing Batshon saw was the base lease, and Addendum A was not attached. He testified that a few days after he received the lease from Lee, he took it to his attorney to review

---

[1] Nadim Batshon did not testify at trial. For ease of reference, we therefore refer to Najib Batshon, who did testify at trial, as "Batshon" singular. We refer to them jointly as "the Batshons."

[2] The parties do not clearly specify Lee's role vis-à-vis Rangoon Ruby. Rangoon Ruby states in its brief without citation to the record, but also without contradiction by appellants, that Lee is Rangoon Ruby's owner.

3

before he signed it, his attorney pointed out it referred to an addendum and asked if there was any attachment included and he said no, and then he signed the lease anyway without investigating any further or asking for a copy of the referenced addendum. He testified he read the lease before signing it, acknowledged its references to an "attachment" and Addendum A, and admitted he didn't ask to clarify the terms of Addendum A but signed the document anyway.

Batshon testified that the first time he saw Addendum A was when Lee gave him a copy several months later in October 2015 and asked him to sign it and he refused. He testified he told Lee he would be willing to sign an addendum if they could agree on terms but did not like the terms Lee was offering in the document.

Lily Pizano testified that she was hired by John Lee, who was a real estate broker, and that her responsibilities included preparing leases. She prepared the lease at issue in this case based on information provided by Lee. She used a form lease that she has used many times. There were three parts, all of which were a part of one lease.

Lee testified he gave Pizano instructions regarding preparation of the lease. He had worked with her on leases before. When she had completed this lease, he picked up the manila envelope containing it from the office and gave it to Batshon.

Lee testified that he and Batshon, who were friends, had previously discussed and agreed to the terms, which entailed him purchasing the restaurant from the previous lessee. They had agreed to a 20-year lease term. Batshon wanted Lee to buy the restaurant because the owner was "in trouble" and was not paying the rent on time. Lee would not have bought the restaurant for $225,000 or $250,000 if the lease was going to be for a five-

4

year term. His plan was to make the money back over the longer term of the lease.

Lee testified that Addendum A was in the manila envelope he gave to Batshon when he delivered the lease for Batshon to sign. He testified that a short time after Batshon returned the lease to him, he discovered that Batshon had not signed the addendum and called Batshon and asked him to sign it. According to Lee, that was when Batshon refused to sign Addendum A.

Malcom Lee, Rangoon Ruby's president who signed the lease on its behalf, testified that when his brother John Lee gave him the lease to sign, he didn't sign Addendum A because he'd overlooked it.

**The Trial Court's Decision**

At the conclusion of trial, based on language in the main lease document and language in the addendum, the court held the addendum was incorporated by reference in the lease and was a part of the lease, and that the language in the addendum stating, "This Lease shall not be effective until and unless signed by all parties" referred to the base lease and not the addendum. This tracked the court's earlier conclusion that the addendum was "part and parcel of the contract," the "lease and the addendum are one document" and constitute "one integrated agreement," and the addendum did not have to be signed to be effective. The court had also observed that whether a document has been incorporated by reference turns on the facts. Regarding the trial testimony, the court expressly found Batshon's testimony not credible, based on inconsistencies, cross-examination and impeachment. It subsequently entered a written, "Tentative Statement of Decision" elaborating on the reasons it found Batshon's testimony not credible, noting both his bias and his "deceitful" and "suspicious" demeanor while testifying

5

during cross-examination.[3]  In its tentative statement of decision, the court found that Addendum A was attached to the base lease when Batshon signed it and on that basis was incorporated into the lease and was valid and binding.

Subsequently, the court entered a judgment declaring that Addendum A is incorporated by reference into the lease and binds both parties, and that Rangoon Ruby appropriately exercised its first option period under Addendum A.

This timely appeal from the judgment followed.[4]

## DISCUSSION

### A. Appellants' Theory They Never Received Addendum A

Appellants' opening brief is not a model of clarity and so we will address their contentions to the extent we are able discern a distinct claim of error.

First and foremost, scattered throughout their opening brief, the Batshons assert that they proved Addendum A was never provided to them and thus they cannot be bound by it.  We reject this argument.

First, they have not cited or discussed any legal authority addressing the legal significance of the facts they claim to have proved.  It is well-settled that an appellant " 'must supply the reviewing court with some cogent

---

[3]  The Batshons have filed a motion to augment the record with the court's tentative decision filed on January 17, 2024, a copy of which was attached as an exhibit to respondent's brief.  We grant the motion and deem the record so augmented.

[4]  The Batshons filed their notice of appeal after the court announced its decision but before entry of the January 18, 2024 judgment.  We treat the notice of appeal as having been filed immediately after entry of the judgment. (See Cal. Rules of Court, rule 8.104(d)(2).)

6

argument supported by legal analysis' " in order to meet their burden on appeal of showing error. (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597; accord, *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 869 [appellant " 'must convince the court, by stating the law . . . that the trial court decision contained reversible error' "].) When an appellant cites no legal authority in support of a claim of error, the point is forfeited. (See *Champir*, at p. 597.) That is the case here.

Second, even if the point were not forfeited, we would reject it. As the plaintiffs seeking a declaration that Amendment A is not binding, the Batshons bore the burden to prove their factual allegation that it was never provided to them. (See Evid. Code, § 500 ["[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"].) And having failed to prove that fact below, they face an extremely high hurdle on appeal. "Where [a] party fails to meet its burden on an issue in the trial court, 'the inquiry on appeal is whether the weight and character of the evidence . . . was such that the [trial] court could not reasonably reject it.' " (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1121.) Their evidence must be: " '(1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" ' " in their favor. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.)

The Batshons' evidence was not of such a character. First, their evidence was not uncontradicted, since as we have stated, Lee testified that Addendum A was included in the package he gave to Batshon when he first delivered the lease to Batshon to sign. Thus, there was "room for a judicial

7

determination" that the Batshons' evidence was insufficient to support the finding that they sought. There was even more room because, as noted, the trial court found Batshon's testimony not credible. We decline the Batshons' request to re-examine that finding. Appellate courts "disregard all contentions challenging the trial court's credibility determinations as insufficient to support reversal of the [judgment]," because "[i]t is settled that ' "[c]onflicts and even testimony [that] is subject to justifiable suspicion *do not justify the reversal of a judgment*, for it is the *exclusive* province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " *Lake Lindero Homeowners Assn., Inc. v. Barone* (2023) 89 Cal.App.5th 834, 838, fn. 2.)

The only other evidence the Batshons cite as proof that Addendum A was never provided to them is a letter from their lawyer noting that the contract Batshon asked him to review did not contain an attachment. But the lawyer's letter was excluded from evidence on hearsay grounds. Although Batshon himself testified that his lawyer asked him if there were any attachments, which is evidence that the copy his lawyer received from Batshon contained none, there are other possible explanations for that omission. It would be speculative to infer that the only reason the lawyer's copy had no Addendum A attached is because the Batshons had never received it. For example, Batshon could have misplaced Addendum A before bringing the paperwork to his lawyer a few days later. The lawyer's letter, standing alone, is not " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" ' " that appellants never received Addendum A. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc., supra,* 196 Cal.App.4th at p. 466.) In

8

short, the trial court did not err in implicitly concluding appellants failed to prove they never received the addendum.

We thus reject the Batshons' argument that because they never received Addendum A, the trial court erred in concluding the addendum is valid and enforceable. The premise of their argument was rejected by the trial court as lacking credibility and appellants have failed to provide a persuasive basis for us to reject the trial court's finding.

## B.     Incorporation by Reference

The Batshons also assert Addendum A could not be incorporated by reference into the lease because it "was not supposed to be a separate document" from the master lease but, rather, was "a modification of the base lease." To the extent this is intended as a distinct legal argument, we reject it. It is confusing and unpersuasive. The Batshons also cite no legal authority apart from a brief discussion of *Republic Bank v. Marine Nat. Bank* (1996) 45 Cal.App.4th 919, which in no way supports the point and the significance of which is not explained. *Republic Bank* held that an attorney fee clause contained in a commercial lease agreement was validly incorporated into the terms of a commercial sublease, and thus in litigation between the tenant and subtenant the prevailing tenant was entitled to recover its attorney fees. (See *id.* at pp. 922-925.)

For the first time in their reply brief, the Batshons cite a handful of decisions addressing the doctrine of incorporation by reference and assert that because Batshon never received or saw Addendum A it cannot be incorporated into the lease. That discussion is unpersuasive too. They do not discuss the newly cited authorities or explain how they apply, and they acknowledge that whether a contract incorporates the terms of another

9

document turns on the facts of each case.[5]  (See *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654 [appellate court disregards arguments that cite authority but fail to explain how they apply].)

More fundamentally, there are two problems with this argument. First, as we have discussed, the Batshons did not establish that they did not receive or see Addendum A before executing the lease, and as we have discussed, the trial court found Batshon's testimony to the effect that he did not receive it was not credible.[6]  And second, even if they had established that assertion, it would not have been legally sufficient to prove the addendum was not part of the parties' contract.  They acknowledge in their reply brief that for a contract to validly incorporate by reference another document it is enough that the incorporated document either be "known *or easily available* to the contracting parties."  (Italics added.)  (See, e.g., *Republic Bank v. Marin Nat. Bank*, *supra*, 45 Cal.App.4th at p. 923 [terms of incorporated document must be " 'readily available to the other party' "].)  So, even if the evidence compelled a finding that Najib Batshon did not receive Addendum A when he was provided with a copy of the lease to sign, the Batshons fail to explain (much less show) why the evidence compelled a finding it was *not* easily available to him had he (or his lawyer) simply just bothered to ask for a copy.  Instead, Batshon just buried his head in the sand regarding the

---

[5]  The only cases the Batshons actually discuss in their reply brief are two that do not involve the doctrine of incorporation by reference.  (See *Louison v. Yohanan* (1981) 117 Cal.App.3d 258; *Smissaert v. Chiodo* (1958) 163 Cal.App.2d 827.)  So their relevance is unclear.

[6]  No evidence was presented regarding whether Nadim Batshon received the addendum.

lease's multiple references to Addendum A when his lawyer called them to his attention and proceeded to sign the lease anyway.

### C. Failure to Sign Addendum A

This leaves only the question whether the trial court erred in concluding Addendum A is binding without signatures on the addendum itself. The Batshons assert that without signatures, it cannot be enforced. To the extent this is intended as an independent claim of error (the briefing is unclear), we reject it.

The Batshons argue that Addendum A contains an ambiguity. It states that "This Lease shall not be effective until and unless signed by all parties." If further states, "IN WITNESS WHEREOF, the parties hereto have executed this Lease Agreement on the 1st day of July of 2015." Following that, the addendum contains signature blocks for both parties. The Batshons argue the term "Lease" is ambiguous and should be construed against Rangoon Ruby, whose agent prepared Addendum A. As we understand their argument, they urge us to read the first quoted sentence to mean that the term "Lease" as used in this context means Addendum A.

In the abstract, considering the Addendum alone, the phrase "This Lease shall not be effective until and unless signed by all parties," when viewed together with the signature lines on the addendum, is arguably ambiguous. However, our analysis does not begin or end with that sentence or with the addendum.

"The threshold question for trial and appellate courts is whether the writing is ambiguous—that is, reasonably susceptible to more than one interpretation. [Citations.] Whether a contract is ambiguous at this initial step of analysis presents a question of law subject to independent review on appeal. [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 986.)

The principles of contract interpretation are well settled, although the Batshons do not address them in any depth.  Generally stated, "[i]n the trial court, and on appeal, contract interpretation always looks first to the words of the contract, but may also extend to parol evidence outside the four corners of the written agreement [citation], such as the parties' course of dealing over time." (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 986.)  Further, " 'language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.' " (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648.)  Stated otherwise, " '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503 [quoting Civ. Code § 1641].)  Because the addendum is made a part and parcel of the lease, the interpretation question requires us to interpret the words "[t]his lease" in the penultimate sentence of the addendum in the context of the entire lease, not based on its use in that sentence alone.

Throughout the form lease document on every page, it uses the phrase "[t]his Lease" and the word "Lease" consistently in ways that plainly refer to the entire lease rather than to the addendum or other specific provisions or parts of the lease.  Where the form lease document refers to parts or provisions, it uses specific language or references.  For example, paragraph 1.5 states, "If this box is checked, there are provisions in this Lease for the Base Rent to be adjusted. . . . *See Addendum A*." (Italics added.)  Similarly, paragraph 1.11, entitled "Attachments," states, "Attached hereto are the following, all of which constitute a part of this Lease:  an *Addendum* consisting of paragraphs 1 through 4; *Exhibit A* Real Property

12

Disclosure and Acknowledgement." (Italics added.) Paragraph 3.4, provides the lessor shall not be required to deliver possession "until Lessee complies with its obligation to provide evidence of insurance (*Paragraph 8.5*)," whereas the Lessee "shall be required to perform all of its obligations under this Lease from and after the Start Date, . . . notwithstanding Lessor's election to withhold possession . . . ." Section 8.1 requires the Lessee to pay certain increases in the "cost of the insurance required under Paragraph 8.2(b), 8.3(a) and 8.3(b)."

The addendum is similar. The first sentence uses the term "Lease" broadly, providing, "The following Addendum is made part of *this Lease* dated July 1, 2015 for the Premises located at 1000 Sixth Avenue, Belmont, CA 94002." (Italics added.) Obviously, "this Lease" refers to the lease in its entirety, not simply to the addendum. Further, the addendum distinguishes between itself and the lease as a whole, again, by referring to "*this Addendum*" as being "part of *this Lease*," and in the next sentence, by stating, "If there are any conflicts between the *Lease* and *this Addendum*, the terms of *this Addendum* shall govern." (Italics added.)

In short, the lease, including both the form lease document and the addendum, consistently use the word "Lease" to refer to the entire lease and use more specific words to refer to the addendum and other parts of the lease. Read as a whole, we do not find the word "Lease" in the penultimate sentence of the addendum ambiguous. Because we conclude the phrase "this Lease" and the word "Lease" are not ambiguous when considered in the context of the lease as a whole, including but not limited to the addendum, we need not address the Batshons' argument that evidence of the parties' course of dealing suggests the parties understood the addendum was not effective

13

without signatures.[7]  Even if we considered it, however, we would conclude it is not enough to overcome the consistent use of the phrase "this Lease" throughout the lease in its entirety.

For the same reason, we need not address the Batshons' argument that we should construe the claimed ambiguity against Rangoon Ruby based on the interpretive maxim that ambiguities in a contractual document are construed against the drafter.  But again, even if we considered the argument, we would reject it because the lease contains a contrary provision.  Paragraph 28, which addresses among other things, "Construction of Agreement," provides, "This Lease shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it."  The Batshons have neither discussed nor provided authority supporting the assertion that construction against the drafter applies in this circumstance.

Finally, also weighing against the Batshons' interpretation is the well-settled principle disfavoring conditions precedent.  As Rangoon Ruby points out, "[c]onditions precedent are not favored and contractual provisions will not be so construed in the absence of language plainly requiring such a construction."  (*In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174, 1181; see *id*. at pp. 1181-1182 [holding that attorney approval of settlement agreement was not condition precedent to formation of valid agreement]; accord, *Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 550 ["courts shall not construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect"].)

---

[7] The Batshons point to Lee's testimony that he asked Najib Batshon to sign the addendum when he realized the document had not been signed.

14

Rangoon Ruby cites this principle but the Batshons do not respond. Here, there is no clear and unambiguous language indicating that Addendum A was not part of the agreement unless the parties signed it. On the contrary, as we have explained, Addendum A's language stating that "This Lease shall not be effective until and unless signed by all parties," is ambiguous. Even when read in combination with Addendum A's blank signature blocks, the documents read as a whole do not contain clear and unambiguous indicia that Addendum A was not part of the contract unless the parties signed Addendum A in addition to the lease itself. On the contrary, the lease's multiple references to Addendum A as well as Addendum A's own language stating that it is "made part of this Lease," strongly contradict such an interpretation.

We thus conclude that the Batshons have failed to meet their burden of persuading us that the trial court erred in interpreting the meaning of Addendum A's signature requirement.

### D. Evidentiary Error

The Batshons also argue the trial court erred by precluding them from eliciting testimony from Batshon about his negotiations with John Lee about the terms of the lease. They assert, without citation to the record, his testimony "would have clarified that the terms of the Addendum and alleged extensions of the lease were never discussed."

It is unnecessary to consider whether the court erred in sustaining objections to questions about what the parties discussed, because any error has been forfeited. There was no offer of proof below as to what Batshon's testimony would have shown which precludes our consideration of this issue. "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence

15

unless . . . the error or errors complained of resulted in a miscarriage of justice and it appears of record that . . . [t]he substance, purpose and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means . . . ." (Evid. Code, § 354, subd. (a).)

Furthermore, even if the error had been preserved for our review, when challenging an evidentiary ruling, an appellant must do more than show the trial court erred. "A court's error in excluding evidence is grounds for reversal only if the appellant demonstrates a miscarriage of justice, that is, that a different result would have been probable had the error not occurred." (*Major v. R.J. Reynolds Tobacco Co.* (2017) 14 Cal.App.5th 1179, 1202; see also *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480; Cal. Const., art. VI, § 13; Evid. Code, § 354; Code Civ. Proc., § 475.) The Batshons have made no attempt to show that here.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs.

_____

STEWART, P. J.

We concur.

_____

RICHMAN, J.

_____

MILLER, J.

*Batshon v. Rangoon Ruby Inv., LLC* (A169307)

17